IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| DANIEL W. JAMISON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:21-cv-1062 (RDA/IDD) |
| ) | |
| STACEY A. KINCAID, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants Master Deputy Sheriff David Plazyk ("Plazyk") and Janet Wurie, NP's ("Wurie") Motion for Summary Judgment. Dkt. 119. Considering Defendants' Motion for Summary Judgment together with Defendants' Statement of Material Facts and Memorandum in Support (Dkt. 120), Plaintiff Daniel W. Jamison's Opposition (Dkt. 123), and Defendants' Reply (Dkt. 124), it is hereby ORDERED that Defendants' Motion for Summary Judgment is GRANTED. For the reasons that follow, judgment will be entered against Plaintiff because there are no genuine issues of material fact.

### I.   BACKGROUND

Plaintiff first brought a Complaint in this Court's Richmond Division on January 9, 2019. Dkt. 1. Plaintiff, who suffers from celiac disease, filed a Particularized Complaint as directed by the Court on October 21, 2019, alleging civil rights violations under 42 U.S.C. § 1983 stemming from the alleged deprivation of medical and dental care he experienced while he was incarcerated at the Fairfax County Adult Detention Center ("ADC"). Dkt. 19. On September 9, 2020, the Court granted in part and denied in part Defendants' Motion to Dismiss and directed any party intending to move for summary judgment to do so within ninety days. Dkt. 56. On December 8, 2020,

Defendants moved for summary judgment. On September 15, 2021, the Court granted in part and denied in part Defendants' summary judgment motion, disposing of all of Plaintiff's claims except Counts 7(b), 7(c), 7(d) and 10. *Jamison v. Kincaid*, No. 3:19-cv-19, 2021 WL 4199997, at *24 (E.D. Va. Sept. 15, 2021). The remaining portions of the Complaint were then transferred to the Alexandria Division, *id.* at *25, and this case was reassigned to the undersigned Judge. Defendants Plazyk and Wurie then filed this Motion for Summary Judgment on November 3, 2021. Dkt. 119. Though Plaintiff had until this point proceeded *pro se*, counsel entered an appearance on his behalf on November 10, 2021. Dkt. 122. Plaintiff, now represented by counsel, filed an Opposition on November 25, 2021, and Defendants replied on December 1, 2021.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Defendants, pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 56, set forth a statement of material facts that they contend are undisputed. In response, Plaintiff substantially complied with his obligations under those rules by submitting statements of undisputed and disputed facts, although Plaintiff in many places failed to comply with the mandate to cite to specific record evidence to support the facts he alleges are in dispute. *See* E.D. Va. Loc. Civ. R. 56(B). Accordingly, the following statement of uncontested facts is derived from a review of the Defendants' statement of undisputed facts, Plaintiff's response, Plaintiff's admissions, and the record.[1]

1. Plaintiff Daniel Jamison was an inmate at the Fairfax County Adult Detention Center from November 2, 2016 to March 20, 2018. Plaintiff was also held in the ADC on August 9, 2016 for

---

[1] Disputed facts are so noted. The Court views certain facts as undisputed, notwithstanding Plaintiff's objections, for the reasons stated *supra* in part III of this Memorandum Opinion.

a brief time.  Plaintiff was found guilty of soliciting to commit a murder on September 25, 2017, *see* Dkt. 6-7 at 1, sentenced on December 15, 2017, and transferred to the Virginia Department of Corrections on March 20, 2018.

2. At times relevant to this lawsuit, Defendant Wurie was an employee of the Fairfax County Sheriff's Office, tasked with providing health care as a Nurse Practitioner, within the scope of her practice, to inmates seeking such care.

3. At times relevant to this lawsuit, Defendant Plazyk was a sworn officer employed by the Fairfax Sheriff.

4. Plaintiff was at the ADC for about 17 months—approximately 500 days—ate 3 meals a day, amounting to a total of about 1,500 meals.  He made 9 formal complaints about his food, 8 of which were in his last weeks at the ADC after his conviction while awaiting transfer to a Virginia Department of Corrections prison.  The complaints were dated May 1, 2017, December 13, 2017, January 16, 2018, January 22, 2018, February 18, 2018, March 1, 2018, March 3, 2018, March 5, 2018, and two forms were dated March 16, 2018.

5. In a complaint dated May 1, 2017, Plaintiff wrote: "Deputy Plazyk has called the kitchen numerous times" to have Plaintiff's food tray corrected.

6. Between May 1, 2017 and January 31, 2018, Defendant Plazyk was assigned to the block where Jamison was housed on the following days: May 25, 2017; June 4, 2017; July 1, 2017; July 10, 2017; December 1, 2, 7-25, 29-31, 2017; and January 4-31, 2018.

7. In a complaint dated February 18, 2018, Plaintiff stated that Defendant Plazyk had called the kitchen on his behalf.

8. Defendant Plazyk was not assigned to the block where Jamison was housed at any time from July 11, 2017 to November 30, 2017 and from February 1, 2018 through March 20, 2018.

9. During the times when Defendant Plazyk was assigned to the area where Plaintiff was housed, he was required to follow, and did in fact follow, certain protocol regarding correction of inmates' meal trays.

10. If an inmate complained that the documentation about their diet was not correct, then the normal and regular practice was to provide the inmate with information on the procedures for requesting a different diet. Plaintiff disputes that Defendant Plazyk followed this protocol.

11. Defendant Plazyk did not have authority to go to the kitchen while he was on duty in the cell blocks; he had to remain at his post on the cell block and follow the procedures discussed.

12. On June 5, 2020, Defendants requested that Plaintiff Jamison provide a medical malpractice certificate of merit or affirmation pursuant to Virginia Code § 8.01-20.1. Plaintiff alleges he never received such a request and does not allege a medical malpractice claim in any event.

13. Plaintiff never responded to Defendants' medical malpractice claim request with a certificate or affirmation.

14. Defendant Wurie is paid a salary through the Fairfax County Sheriff's Office.

15. Some services are provided at the ADC and some services are provided by outside medical professionals, sometimes inside the jail or sometimes outside of the jail, depending upon the type of care or treatment needed.

16. Plaintiff sought medical treatment many times during his incarceration at the ADC. From the records, it appears that he requested medical and dental care more than 70 times over the approximately 17 months he was at the ADC, which averages about 4 times a month. Some of these requests appear to be duplicate requests that he made after he did not receive care in response to an initial request.

17. The initial health screenings are performed by nursing staff. On the initial health screening done on November 2, 2016, which Defendant Wurie did not perform, Plaintiff was asked if he was presently on any diet ordered by a doctor, to which he answered "no." When asked about allergies, he noted his allergies to strawberries and penicillin. There was also another initial screening from August 2016 in Plaintiff's file. On the same question asking if he was presently on a diet ordered by a doctor, Plaintiff answered "no," and on the question as to allergies, Plaintiff reported an allergy to poultry and strawberries.

18. On both of these intakes, there is no notation of any celiac disease diagnosis, no notation of a gluten-free diet, no mention of any particular diet ordered by a doctor, and no mention of any allergy to gluten or sensitivity to gluten.

19. Plaintiff had kitchen orders for no poultry or strawberry.

20. On June 2, 2017, Plaintiff saw Defendant Wurie at a visit and requested a change of his diet to a bland diet. He mentioned that he may have a history of celiac disease but did not provide details to Wurie about this celiac issue at that visit, did not advise Wurie that he was ever previously ordered on a gluten-free diet, and did not advise Wurie who may have given him any diagnosis or working diagnosis of celiac.

21. On August 10, 2017, Plaintiff acknowledged and knew he was on a bland diet as ordered through the medical department. *See* Dkt. 120-7 at 2.

22. On August 7, 2017, after he mentioned celiac disease to Defendant Wurie, Plaintiff specifically asked for "desert cake" for his meal trays.

23. Plaintiff did not tell Defendant Wurie he was ever on a bean-free diet.

24. Plaintiff did advise on his intake that he had an allergy to poultry and strawberries. He was on a no poultry and no strawberry diet through the kitchen while he was at the ADC. Defendant Wurie did not refuse his no-poultry diet request.

25. On August 9, 2016, Plaintiff completed an authorization for release of medical records for Berkeley Family Medicine; however, he did not check any of the boxes to indicate which records were releasable to the ADC. On November 2, 2016, Plaintiff completed an authorization for release of medical records for Dr. Weaver of Reston, Dr. Zeller of Winchester, and Berkeley Family Medicine. However, Plaintiff checked none of the boxes indicating which types of records either of the three providers would be permitted to disclose. Plaintiff corrected the release form, checking boxes indicating which records were releasable, on November 9, 2016, but only as to Dr. Zeller.

26. During Plaintiff's time at the ADC, the ADC had received Plaintiffs' prior records from Fairfax Family Practice from 2009-2011, although it is unclear when they arrived in Plaintiff's chart at the ADC.

27. The ADC also received Plaintiff's records from the Center for Advanced Orthopedics and Pain Management from 2009, although it is unclear when they were included in Plaintiff's chart.

28. The ADC also received Plaintiff's records from the Fairfax-Falls Church Community Services Board from 2016-2017. His listed allergies only included penicillin. His medical history listed reflux treated by Zantac. He complained of anxiety in part due to abdominal and lower back pain, however, celiac disease or gluten free diet was not mentioned anywhere in the records.

29. Defendant Wurie saw Plaintiff on March 21, 2017, and the records show he complained about blurry vision. He denied diabetes mellitus and denied any prior history of wearing glasses.

6

30. Plaintiff was seen by an optometrist on May 16, 2017, when he had a prescription written. He received a pair of glasses on May 27, 2017.

31. Plaintiff was issued a grievance with respect to his medical claims, later determined to be unfounded. Plaintiff appealed that decision and it was again determined to be unfounded. Plaintiff's grievance, however, did not address issues relating to his claim concerning his referral or lack thereof to an eye doctor.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is appropriate only if the record shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Hantz v. Prospect Mortg., LLC*, 11 F. Supp. 3d 612, 615 (E.D. Va. 2014) (quoting Fed. R. Civ. P. 56(a)). "A material fact is one 'that might affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Hantz*, 11 F. Supp. 3d at 615-16 (quoting *Spriggs v. Diamond Auto. Glass*, 242 F.3d 179, 183 (4th Cir. 2001)). The moving party bears the "initial burden to show the absence of a material fact." *Sutherland v. SOS Intern., Ltd.*, 541 F. Supp. 2d 787, 789 (E.D. Va. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

On summary judgment, a court reviews the evidence and draws all reasonable inferences in the light most favorable to the non-moving party. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 570 (4th Cir. 2015) (quoting *Tolan v. Cotton*, 572 U.S. 650, 657 (2014)); *McMahan v. Adept Process Servs., Inc.*, 786 F. Supp. 2d 1128, 1134-35 (E.D. Va. 2011) (citing *Rossignol v.*

*Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)). This is a "fundamental principle" that guides a court as it determines whether a genuine dispute of material fact within the meaning of Rule 56 exists. *Jacobs*, 780 F.3d at 570. "[A]t the summary judgment stage[,] the [Court's] function is not [it]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

A factual dispute alone is not enough to preclude summary judgment. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. A "material fact" is one that might affect the outcome of a party's case. *Id.* at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). The substantive law determines whether a fact is considered "material," and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" issue concerning a "material fact" arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor. *Anderson*, 477 U.S. at 248.

Rule 56(e) requires the non-moving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324. "An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). And this Court requires that the non-moving party list "all material facts as to which it is contended that there

8

exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute." E.D. Va. Loc. Civ. R. 56(B).

III. ANALYSIS

Defendants move for summary judgment on Counts 7(b), 7(c), 7(d) and 10 of the operative Complaint. *See* Dkt. 119 at 10-16. According to Defendants, there are no genuine issues of material fact regarding any of Plaintiff's claims, and Defendants are therefore entitled to summary judgment.

Plaintiff argues that Defendants' Motion should be denied because Defendant Wurie was deliberately indifferent to Plaintiff's medical need for blood tests, treatment for his previously diagnosed celiac disease, and an appropriate diet. Dkt. 123 at 1-2. He also argues that Defendant Wurie was deliberately indifferent in refusing to send him to an optometrist. *Id.* at 2. As for Defendant Plazyk, Plaintiff argues that he was deliberately indifferent to Plaintiff's serious medical needs by refusing to exchange his meal trays despite knowing they were wrong. Plaintiff contends that Defendants' refusal to provide medical care and treatment prolonged Plaintiff's symptoms, including diarrhea, vomiting, gas, abdominal pain and scalp infection, as well as his mental and emotional suffering. And because Plaintiff asserts there is a genuine dispute of material fact, he maintains that his claim for punitive damages survives. *Id.* (citing *Smith v. Wade*, 461 U.S. 30, 56 (1983)).

Before turning to the merits of Plaintiff's Eighth Amendment claims, the Court begins by addressing a threshold issue with respect to Plaintiff's Opposition. The Court has repeatedly advised Plaintiff that he must set forth any facts in opposition to any summary motion in a separate document titled "Affidavit" or "Sworn Statement." Dkt. 114 at 7-8. Yet Plaintiff failed to supply any such documentation, and many of his denials of Defendants' undisputed material facts are

either not accompanied by any citation to record evidence at all or simply citations to Plaintiff's Particularized Complaint. The Court, however, notified Plaintiff in its September 15, 2021 Memorandum Opinion that citing to allegations in his pleadings would be insufficient evidence that a particular material fact could be treated as disputed on summary judgment. *Id.*

District courts are "not required to sift through the record searching for evidence to support opposition to summary judgment." *Crawford v. Newport News Indus. Corp.*, No. 4:14-cv-130, 2018 WL 2943445, at *18 (E.D. Va. June 11, 2018) (internal citation omitted). Under Federal Rule of Civil Procedure 56(e), the Court may consider a fact undisputed when a non-movant fails to properly address another party's assertion of fact as the Federal Rules of Civil Procedure require. *See* Fed. R. Civ. P. 56; *Liberty Ins. Corp. v. TLB*, 433 F. Supp. 3d 902, 907 (E.D. Va. 2020) ("If a party fails to address the other party's assertion of fact, the Court may 'consider the fact undisputed for purposes of the motion.'") (quoting Fed. R. Civ. P 56(e)(2)). The Court is not required to essentially peek about in the dark recesses of Plaintiff's complaint looking for a justiciable controversy. As a result, where Plaintiff responds to a specific Statement of Fact without any citation to documents in the record, responds with conclusory assertions unsupported by admissible evidence, or cites only allegations from his own Complaint, the Court treats those facts as undisputed. *See Integrated Direct Mktg., LLC v. May*, 129 F. Supp. 3d 336, 345 (E.D. Va. 2015) ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine facts in opposition to the motion.") (quoting E.D. Va. Loc. Civ. R. 56(B)), *aff'd*, 690 F. App'x 822 (4th Cir. 2017).

Under the Eighth Amendment, deliberate indifference to a prison inmate's serious medical needs constitutes cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

A deliberate indifference claim requires a prisoner plaintiff to allege both that he was deprived of medical care for objectively "'serious' medical needs" and that the defendant official acted with a subjectively culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (quoting *Estelle*, 429 U.S. at 106). Under any means of proof, the defendant's indifference to the inmate's medical needs must be purposeful and substantial, not merely negligent, inadvertent, or the product of differences in medical judgment or opinion. *See Hixson v. Moran*, 1 F.4th 297, 303 (4th Cir. 2021) (emphasizing that "mere negligence is not enough to show deliberate indifference").

The Court first looks to Plaintiff's claims against Defendant Plazyk before addressing claims brought against Defendant Wurie.

### A. Defendant Plazyk

Plaintiff in Claim 10 of his Complaint alleges that Defendant Plazyk acted with deliberate indifference to Plaintiff's alleged concerns when he refused to call the ADC kitchen about Plaintiff's food trays that, according to Plaintiff, were not diet-appropriate. Dkt. 19 at 21. But the undisputed facts on summary judgment establish that Plaintiff did, in fact, receive assistance from Defendant Plazyk regarding the incorrect food trays. When he made a complaint about his food trays on May 1, 2017, Plaintiff stated that "Deputy Plazyk has called the kitchen numerous times" in an effort to correct Plaintiff's food tray. After this date, Deputy Plazyk was assigned to the area of ADC where Plaintiff was housed in May of 2017, June of 2017, July of 2017, December of 2017, and January of 2018.

The allegation that Defendant Plazyk refused to call the kitchen about allegedly improper food trays is contradicted by Deputy Plazyk's sworn declaration that he did not refuse, an undisputed fact that is supported by record evidence—including Plaintiff's own complaint forms filed while he was in custody at ADC. Dkt. 120 ¶ 5; 120-5 at 2 (stating that "Deputy Plazick [sic]

11

has called the kitchen numerous times and one time Mr. Conners told him 'Well I don't know what we will feed him.'"). Under the exhibit-controls rule, these documents prove that Deputy Plazyk did, in fact, contact the kitchen in efforts to address Plaintiff's food tray complaints. *See Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) ("Indeed, in the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c), Fed. R. Civ. P., the exhibit prevails.") (citing 2A Moore's Federal Practice, ¶ 10.06 at 10-24).

Plaintiff's May 1, 2017 reference to Deputy Plazyk's "numerous" efforts to assist him was not the final word on issues with his food trays, with Plaintiff logging many more grievances about food trays. Some complaints alleged that the food trays ADC provided did not comply with his requirement to have a bland and gluten-free diet because of his celiac disease; other complaints took issue with the quantity of food on Plaintiff's trays compared to other inmates' food trays. Plaintiff lodged additional complaints on August 15, 2017; December 13, 2017; January 18, 2018; January 23, 2018; February 18, 2018; March 3, 2018; and March 16, 2018. The record shows that Defendant Plazyk was only assigned to the area of the jail where Plaintiff was housed in December of 2017 and in January of 2018. Even during those periods, however, Plaintiff's deliberate indifference allegations arising from his improper food trays are directed to Defendant Lt. Messier. Those claims have already been dismissed from this case, *see Jamison v. Kincaid*, No. 3:19-cv-19, 2021 WL 4199997, at *18-20. (E.D. Va. Sept. 15, 2021), and this Court determines that no reasonable jury could find that Defendant Plazyk played acted with deliberate indifference during the instances Plaintiff alleges.

Furthermore, the summary judgment record establishes that Defendant Plazyk acted in a manner consistent with his obligations and authority while he was assigned to the area where

Plaintiff was housed. When Plaintiff complained about his food tray to Defendant Plazyk, he checked the food cart's list of inmates to ensure the list matched the specific tray. Defendant Plazyk also checked a computer system to review any documentation about Plaintiff's special diet. Dkt. 120-4 ¶ 5. If Plaintiff's food tray did not match the documentation, Defendant Plazyk would then call the kitchen staff to request that the food tray be corrected. *Id.* If the kitchen staff did not answer the phone, he would instead radio a supervisor or a floater and request that the kitchen staff bring the correct food tray to Plaintiff. *Id.* These actions were consistent with his authority; while on duty in cell blocks, Defendant Plazyk was required to remain at his post and was not allowed to leave to go to the kitchen. *Id.* ¶¶ 6-7; *cf. Thayer v. Adams*, 364 F. App'x 883, 891 (5th Cir. 2010) (holding that defendant who had "no authority to prescribe drugs or embark on a different course of treatment" was not deliberately indifferent); *Lowe v. Davenport*, 442 F. App'x 955, 956 (5th Cir. 2011) (stating that defendant that lacked the authority to prescribe medications was not deliberately indifferent).

Based on this evidence, no reasonable factfinder could return a verdict in Plaintiff's favor and against Defendant Plazyk. *See Anderson*, 477 U.S. at 248. Viewing all facts in Plaintiff's favor, the Court finds that on the record before it, no genuine issues of material fact exist. Defendant Plazyk is therefore entitled to summary judgment.

### B. Defendant Wurie

Three deliberate indifference claims against Defendant Wurie are at issue. In Claim 7(b), Jamison contends that he informed Defendant Wurie of his "dietary issues of no bean, celiac/no gluten and no poultry," yet she refused to provide Jamison with appropriate orders for his diet. In Claim 7(c), Plaintiff contends that Defendant Wurie refused to conduct blood tests or obtain Plaintiff's pre-incarceration medical records to confirm that Jamison had celiac disease. And in

Claim 7(d), Plaintiff asserts that Defendant Wurie "refused to send [him] to an optometrist until he could pay for his transportation and his medical copayment."

### 1. Claims 7(b) and 7(c)

A plaintiff asserting that a prison official acted with deliberate indifference to his medical condition in violation of the Eighth Amendment must do more than allege mere medical negligence. *See Hixson*, 1 F.4th at 303 (4th Cir. 2021); *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977) (holding that medical-treatment allegations founded on "negligence, mistake, or difference of opinion" are not actionable) (citing *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975)).

Turning first to Plaintiff's claim alleging a constitutional violation with respect to his celiac disease, the record does not contain any confirmation whatsoever that Plaintiff was diagnosed with celiac disease while he was held at ADC. Instead, it appears that Plaintiff suggested to Defendant Wurie in June of 2017 that he had been diagnosed with celiac disease at some point in the past. The details of this underlying diagnosis were murky at best, however. Plaintiff did not tell Defendant Wurie who had diagnosed him with celiac disease, when he had been diagnosed, or any other details that might have aided Defendant Wurie in responding to this comment. Plaintiff did not provide a release for prior records that may have mentioned celiac disease, and the records that were available *at that time* did not mention celiac disease. Moreover, Plaintiff also repeatedly stated that he had not been placed on a particular medical diet by any doctor. *See* Dkt. 120-3 at 6, 12. Despite this, Plaintiff specifically requested that he be placed on a bland diet in June of 2017, and Defendant Wurie obliged Plaintiff's request by ordering Plaintiff on a bland diet. Defendants argue that this course of action, in addition to responding to Plaintiff's direct request, was meant to assist in determining whether celiac disease might be an issue or whether some other food might have been at issue.

*After* Plaintiff was no longer housed at Fairfax ADC, the jail received records from Berkeley Family Medicine noting that Plaintiff had received a celiac disease diagnosis, among many other diagnoses in his health records. Dkt. 91-1 ¶ 59. These after-the-fact records did not contain any recommended treatment for celiac disease and revealed that Plaintiff had never been ordered on a gluten-free diet. An inmate does not have a right to receive treatment for a condition where there is no confirmation that an inmate does, in fact, suffer from that condition. *Bowring v. Godwin*, 551 F.2d 44, 49 (4th Cir. 1977). Here, despite her best efforts to obtain more information regarding Plaintiff's professed celiac disease, Defendant Wurie had no reliable basis upon which she could order a course of treatment beyond the dietary modifications she had ordered after Plaintiff's June 2017 disclosure.

As for Plaintiff's claims that he suffered a constitutional deprivation by virtue of Defendant Wurie's denial of his requested no-poultry and no-bean diet, the summary judgment record shows that Plaintiff was indeed placed on a no-poultry diet. Dkt. 120-3 ¶ 8. Defendant Wurie did not refuse this request, which the jail plainly accommodated. Additionally, Plaintiff never requested that Defendant Wurie place him on a no-bean diet; without such a request, Defendant Wurie could not have refused to put Plaintiff on a no-bean diet.[2] Instead, the evidence shows that Plaintiff was placed on a bland diet that excluded poultry and strawberries, which Plaintiff advised he was allergic to on his prison intake form. *Id.* at 19.

Turning to Plaintiff's claim that Defendant Wurie refused to conduct blood tests in connection with his possible celiac disease, the Court views this claim as criticizing Defendant Wurie's plan of treatment. In response, Defendant Wurie emphasizes in a declaration that the

---

[2] To the extent Plaintiff is arguing that Defendant Wurie should have understood a gluten-free diet to also mean a no-bean diet, the Court notes that Defendant Wurie points out that "beans do not have gluten." Dkt. 120-3 ¶ 7.

ordinary first step in dealing with potential celiac disease is to change the diet to eliminate certain factors and avers that a blood test is not the first step. Dkt. 120-3 ¶ 6. The undisputed facts show that Defendant Wurie did not refuse to treat Plaintiff. At best, Plaintiff's allegations takes issue with Wurie's selected course of treatment. But this disagreement is insufficient to create a genuine issue of material fact under the relevant substantive law. *See, e.g.*, *Jackson v. Sampson*, 536 F. App'x 356, 357 (4th Cir. 2013) (holding that plaintiff's "dispute with Defendants' decision not to authorize the particular treatment program he requested, and the subsequent course of monitoring he received, amounts to a disagreement with his course of treatment that is not cognizable under the Eighth Amendment"); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (stating that even where "treatment decisions may have been mistaken, even gravely so," claims that amount to a '[d]isagreement[ ] between an inmate and a physician over the inmate's proper medical care' . . . fall short of showing deliberate indifference) (quoting *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985)); *Gatlin v. Piscitelli*, No. 3:20-cv-115, 2021 WL 683163, at *4 (E.D. Va. Feb. 22, 2021) ("Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less to demonstrate deliberate indifference."). This alone dictates that summary judgment must be granted in Defendant Wurie's favor on Claims 7(b) and 7(c) of Plaintiff's Complaint.

Insofar as Plaintiff alleges that differing expert opinions preclude summary judgment, this argument is a nonstarter in a case where, as here, he has not proffered any opposing expert witness testimony. And although Plaintiff expressly disclaims that he asserts a medical malpractice claim against Defendant Wurie through his Eighth Amendment claims, his failure to obtain a certificate of merit as required under Virginia law would be "fatal" to any such medical malpractice claim in any event. *Parker v. United States*, 475 F. Supp. 2d 594, 597 (E.D. Va. 2007). For these additional

reasons, Defendant Wurie is entitled to summary judgment on Claims 7(b) and 7(c).

2. Claim 7(d)

Plaintiff's claim that Defendant Wurie refused to send him to an optometrist until he had satisfied certain preconditions raises questions related to administrative exhaustion; this Court addresses exhaustion as a threshold issue.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement is mandatory," *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)), and an "untimely or otherwise procedurally defective administrative grievance" does not satisfy the PLRA's exhaustion requirement. *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006). Exhaustion is required even if the administrative remedies do not meet federal standards, are not "plain, speedy, and effective," and even if the relief sought is not available via the grievance process, such as monetary damages. *Porter*, 534 U.S. at 524. To properly exhaust, thereby giving the agency a full and fair opportunity to adjudicate a plaintiff's claims, the plaintiff must adhere to the agency's deadlines and procedural rules. *Woodford*, 548 U.S. at 89-90.

The PLRA also requires an inmate to exhaust his administrative remedies before bringing a suit to challenge prison conditions. *Ross v. Blake*, 136 S. Ct. 1850, 1854–55 (2016) (quoting 42 U.S.C. § 1997e(a)) (holding that the PLRA "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions.") (emphasis added); *see Graham v. Gentry*, 413 F. App'x 660, 662-63 (4th Cir. 2011) (observing that the PLRA requires an inmate to exhaust any "available" administrative remedies before pursuing a § 1983

action in federal court). The requirement that a prisoner exhaust before filing "allow[s] a prison to address complaints about the program it administers before being subjected to suit, reduc[es] litigation to the extent complaints are satisfactorily resolved, and improv[es] litigation that does occur by leading to the preparation of a useful record." *Porter*, 534 U.S. at 519.

Although Plaintiff was issued a grievance authorization regarding his medical claims, it is undisputed that this grievance did not address his referral or lack thereof to an eye doctor. Under the PLRA, the Court cannot entertain this claim as Plaintiff did not first avail himself of ADC's internal procedures for raising this optometry-related challenge. The jail's administrative complaint procedures were familiar to Plaintiff; he utilized the internal grievance process for his medical claims and could have also done so with respect to his optometrist visit claim. Because exhaustion is a mandatory requirement, district courts cannot exercise their discretion to hear claims that a plaintiff has not exhausted. *See Woodford*, 548 U.S. at 85. Summary judgment must therefore be entered against Plaintiff on Claim 7(d).

## IV. CONCLUSION

For these reasons, it is hereby ORDERED that Defendants' Motion for Summary Judgment (Dkt. 119) is GRANTED as to Claims 7(b), 7(c), 7(d) and 10 of Plaintiff's Particularized Complaint (Dkt. 19).

The Clerk is directed to enter judgment for Defendants Plazyk and Wurie pursuant to Federal Rule of Civil Procedure 58 and close this civil action.

It is SO ORDERED.

Alexandria, Virginia
March 30, 2022

/s/
Rossie D. Alston, Jr.
United States District Judge